HOOPESTON CANNING COMPANY, INC., et al., Respondents, *v.* LOUIS H. PINK, as Superintendent of Insurance of the State of New York, et al., Appellants.

(Consolidated Actions.)

Argued January 16, 1942; decided June 4, 1942.

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein, Vincent Kiebala* and *Milton Kaplan* of counsel), for appellants. The statutes referred to in the complaints are valid with respect to the business of insurance done by the plaintiffs in the State of New York. (*People* v. *Roschli,* 275 N. Y. 26; *Thomas Canning Co.* v. *Canners Exchange Subscribers,* 219 Mich. 214; *German Alliance*

*Co.* v. *Lewis,* 233 U. S. 389; *Compania de Tabacos* v. *Collector,* 275 U. S. 87; *O'Gorman & Young* v. *Hartford Ins. Co.,* 282 U. S. 251; *Green* v. *Chicago, B. & Q. Ry. Co.,* 205 U. S. 530; *General Ry. Signal Co.* v. *Virginia,* 246 U. S. 500; *International Harvester* v. *Kentucky,* 234 U. S. 579; *Commercial Mutual Accident Co.* v. *Davis,* 213 U. S. 245; *Warner* v. *Livingston,* 243 Mich. 561; *Tauza* v. *Susquehanna Coal Co.,* 220 N. Y. 259; *Lumbermen's Ins. Co.* v. *Meyer,* 197 U. S. 407.) The statutes do not extend in their effect beyond the borders of the State of New York. (*Osborn* v. *Ozlin,* 310 U. S. 53; *Equitable Life Assur. Soc.* v. *Penn.,* 238 U. S. 143; *Compania de Tabacos* v. *Collector,* 275 U. S. 87.) The statutes are a reasonable exercise of the police power of the State with respect to the business done by the plaintiffs in the State. (*German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389; *Springfield Fire & Marine Ins. Co.* v. *Holmes,* 32 Fed. Supp. 964; *La Tourette* v. *McMaster,* 248 U. S. 465; *O'Gorman & Young* v. *Hartford Ins. Co.,* 282 U. S. 251; *Osborn* v. *Ozlin,* 310 U. S. 53.)

*Franklin D. Trueblood* and *Carl O. Olson* for respondents. The State has no jurisdiction over plaintiffs' contracts of inter-insurance. (*Westchester Mortgage Co.* v. *G. R. & I. R. R. Co.,* 246 N. Y. 194; *Micca* v. *Wisconsin Nat. Life Ins. Co.,* 75 Fed. Rep. [2d] 710; *Stone* v. *Penn Yan, K. P. & B. Ry. Co.,* 197 N. Y. 279; *Huntington* v. *Sheehan,* 206 N. Y. 486; *Van Voorhis* v. *Brintnall,* 86 N. Y. 18; *Pennsylvania Lumbermen's Ins. Co.* v. *Meyer,* 197 U. S. 407; *International Text Book Co.* v. *Tone,* 220 N. Y. 313; *Bouker Contracting Co.* v. *Scribner,* 52 App. Div. 505.) The acts of the trained insurance engineers in New York State form no basis for jurisdiction in that State to regulate plaintiffs' Illinois contracts. (*Allgeyer* v. *Louisiana,* 165 U. S. 578; *Crandall* v. *Nevada,* 73 U. S. 35; *Hyde* v. *Goodnow,* 3 N. Y. 266; *Western* v. *Genesee Mutual Ins. Co.,* 12 N. Y. 258; *Green* v. *C., B. & Q. Ry. Co.,* 205 U. S. 530; *Palmetto Fire Ins. Co.* v. *Beha,* 13 Fed. Rep. [2d] 500; *Connecticut Fire Ins. Co.* v. *Way,* 62 N. H. 622; *Minnesota Commercial Men's Assn.* v. *Benn,* 261 U. S. 140; *People ex rel. McCall* v. *Gilbert,* 44 Hun, 522.) Since all contracts of inter-insurance are entered into in Illinois the plaintiffs do no business in New York State in the sense of conferring jurisdiction to regulate. (*People ex rel. Sea Ins. Co.* v. *Graves,*

274 N. Y. 312; *People ex rel. Kirkman* v. *Van Amringe,* 266 N. Y·
277; *Huntington* v. *Sheehan,* 206 N. Y. 486; *Boston Mfrs. M. F.
Ins. Co.* v. *Hendricks,* 41 Misc. Rep. 479; *Knights Templars' &
Masons' Life Indemnity Co.* v. *Jarman,* 187 U. S. 197; *Rybasack*
v. *Travelers Ins. Co.,* 15 N. J. Misc. Rep. 266.)   The New York
licenses afford no basis for the exercise of jurisdiction by that
State to regulate plaintiffs' contracts.   (*International Text Book
Co.* v. *Tone,* 220 N. Y. 313; *U. S. Mortgage & Trust Co.* v. *Ruggles,*
258 N. Y. 32; *People ex rel. Provident Life Assur. Society* v. *Miller,*
179 N. Y. 227; *New York Life Ins. Co.* v. *Head,* 234 U. S. 149.)
Neither the location of the property nor the residence of the sub-
scriber in New York State can serve as a basis for the exercise of
jurisdiction by that State to regulate plaintiffs' Illinois contracts.
(*Hyde* v. *Goodnow,* 3 N. Y. 266; *People ex rel. Kirkman* v. *Van
Amringe,* 266 N. Y. 277; *People* v. *Imlay,* 20 Barb. 68; *Western*
v. *Genesee Mut. Ins. Co.,* 12 N. Y. 258; *U. S. Mortgage & Trust
Co.* v. *Ruggles,* 258 N. Y. 32; *Clay Fire Ins. Co.* v. *Huron Salt Co.,*
31 Mich. 345; *Palmetto Fire Ins. Co.* v. *Beha,* 13 Fed. Rep. [2d]
500; *Equitable Life Assur. Soc.* v. *Pennsylvania,* 238 U. S. 143;
*Jones* v. *Metropolitan Life Ins. Co.,* 158 Misc. Rep. 466.)   The
statutes are inapplicable or invalid on the ground of unreasonable
regulation.   (*Nebbia* v. *New York,* 291 U. S. 502; *McLean* v.
*Arkansas,* 211 U. S. 539; *C., B. & Q. R. R. Co.* v. *McGuire,* 219
U. S. 549; *Hauser* v. *North British & Mercantile Ins. Co.,* 206
N. Y. 455; *Northwestern Nat. Ins. Co.* v. *Lee,* 49 Fed. Rep. [2d] 274.)

CONWAY, J.   This is an action seeking a declaratory judgment
that certain sections, or portions thereof, of the Insurance Law
(Cons. Laws, ch. 28), as amended in 1939, relating to the regu-
lation of foreign reciprocal insurers authorized to transact the
business of insurance within New York State, are illegal and invalid
in so far as they purport to affect two licensed foreign reciprocal
insurers or inter-insurers.   The two groups are known as the
Canners Exchange Subscribers at Warner Inter-Insurance Bureau,
hereinafter called Canners, and Warner Reciprocal Insurers, herein-
after called Warner.

In 1930 Canners was authorized to transact within this State the
business of fire, lightning, hail, windstorm, use and occupancy and
sprinkler leakage insurance, pursuant to the then existing pro-

visions of section 305 (now § 422) of the Insurance Law. It has continued to be so authorized to date. There are approximately nine hundred seventy-six persons, firms and corporations engaged in the canning industry who are subscribers and approximately ninety-three of them are located in New York State. This action was brought by plaintiffs in a representative capacity on behalf of all the subscribers in Canners. Under the plan each subscriber insures all other insurers and in turn is insured by them. There is an exchange of indemnity among the subscribers evidenced by insurance policies. The exchange of so many policies with the necessity of affixing signatures thereto would be impracticable. Each of the subscribers, therefore, appoints an attorney-in-fact by executing a power of attorney. The attorney-in-fact is Lansing B. Warner, Inc., which has its only office in Chicago, Illinois. The appointment authorizes the attorney-in-fact to execute the reciprocal insurance policies, to exchange the contracts of inter-insurance, to receive deposits, to give and receive notices and adjust claims, to bring, defend, compromise or adjust suits at law or in equity and to appoint an agent or representative in any state upon whom process may be served and to perform such other acts as may be necessary. It is a continuing power of attorney and under it subsequent reciprocal insurance contracts are executed. The consideration for the contracts of reciprocal insurance is the exchange of indemnity among subscribers. The obligation of the subscriber is several, separate and individual. To secure his liability in the exchange of contracts, the subscriber agrees to deposit with the attorney-in-fact a sum of money to be designated " Expense and Guarantee Fund," together with a further sum of ten dollars to be designated " Reserve Fund " which may be increased to an average amount of two dollars for each $1,000 of insurance carried by the subscriber. The liability of the subscriber is only such proportionate share of the insurance granted under his policy as the reserve fund deposit of the subscriber bears to the aggregate reserve fund deposits of all subscribers. The power of attorney further provides for the creation of an advisory committee of five members prominent in the canning industry. Their duties are supervisory and they have custody of the funds deposited and are consulted before any new subscriber is admitted. The compensation of the attorney-in-fact

is twenty per cent of the expense and guarantee fund due from each subscriber. In return the attorney-in-fact agrees to pay all expenses except certain enumerated ones.

Ordinarily, a canner in this State who wishes to become a subscriber writes to Lansing B. Warner, Inc., at its office in Chicago, Illinois, inquiring about the plan. Usually this is done after one of the subscribers in this State has recommended the plan to him. Sometimes the subscriber himself writes, asking the attorney-in-fact to explain the plan to a prospective applicant. Thereupon an inspector or engineer of Canners from Chicago calls upon the prospective applicant at his place of business in New York to explain the plan and its operation and for the purpose of investigating his properties and determining whether in that respect he is eligible to be a subscriber. At the same time the attorney-in-fact also consults with subscribers to determine the standing of the applicant in his community, his reputation for honesty, his " general housekeeping ability and carefulness " and his credit, a report upon which is also obtained from the prospective subscriber's bank. The engineer reports back to the Chicago office and makes a recommendation as to whether an application blank should or should not be sent to the prospective applicant. The attorney-in-fact makes the decision. The application blank when forwarded is accompanied by a power of attorney both of which are to be signed by the prospective applicant and returned by mail to Chicago, together with a deposit in the amount requested. The amount of the deposit is determined by the attorney-in-fact and is based on the amount of indemnity desired and the physical characteristics and hazards of the subscriber's property. After the acceptance of the application, the engineers of the exchange " service the risk " so as to minimize the risk of loss. A fire insurance policy written on a standard form, approved by the Superintendent of Insurance of this State, is signed by the attorney-in-fact and mailed from Chicago to the subscriber.

The exchange employs twenty-five or twenty-six trained insurance engineers specializing in fire insurance hazards. They inspect physical properties, investigate the moral hazard of a prospective subscriber and explain the plan of reciprocal insurance to him. These men travel out from Chicago and consult with subscribers

as to methods for reducing fire hazards on properties insured, such as by building fire walls, putting in wire glass windows and by other methods familiar to insurance engineers. In the event of a large loss an inspector or engineer is sent from Chicago to examine the property affected and to report back. Upon the basis of his findings the loss is paid from Chicago by the attorney-in-fact. The inspector or engineer has authority to investigate the cause of the fire so that steps may be taken to prevent a similar future loss.

Prior to 1936 no taxes were paid to the State of New York. In 1935, the Insurance Law was amended (L. 1935, ch. 651) so as to provide for the payment of a premium tax for the privilege of doing business in this State (Cons. Laws, ch. 28, § 34.) The Superintendent of Insurance of the State determined that the statute, as amended, was applicable to inter-insurers. A report on premium income so taxable was filed for the year 1935 and taxes for that year were paid under protest. Reports for succeeding years have been filed and taxes paid without protest. The total of the taxes paid by Canners and Warner for the years 1935 to 1938 is $16,026.39.

The annual statements filed with the Superintendent of Insurance of the State by Canners for the years 1931–1938, inclusive, show that, except for the years 1932 and 1933, the gross risks written in this State have increased progressively from approximately $23,000,000 to $81,000,000; the net risks from approximately $8,000,000 to $32,000,000.

The second group consists of wholesale grocers who are reciprocal insurers under the name of Warner Reciprocal Insurers and they operate under substantially the same plan as do the subscribers of Canners. The principals in this group, however, execute a document known as " Appointment of Agent " instead of a power of attorney. The same corporation which is attorney-in-fact for the subscribers of Canners is agent for the principals of Warner. The appointment of agent provides that the principals shall deposit with the agent at Chicago a sum designated " Guaranty Deposit," the amount of which is to be determined by the agent in accordance with the risk, amount and term of insurance. The liability of the principal is " several, separate and not joint." Provision is made for " Advisors," similar to those on the advisory committee

of Canners and for compensation of the agent. The risks are serviced by the underwriting and engineering department of the agent.

The plaintiffs represent approximately 2,100 persons, firms and corporations constituting the principals in Warner of whom approximately 230 are located in this State. The gross risks of Warner in this State were approximately $7,000,000 in 1931 and $38,000,000 in 1938.

Plaintiffs allege that although Insurance Law (L. 1939, ch. 882), section 414, subdivision 2, allows to every authorized foreign reciprocal insurer one year after the effective date of the chapter, January 1, 1940, to revise its subscribers' agreement and its articles of association, if any, so as to conform to the regulations applicable to reciprocal insurers thereafter to be organized under Insurance Law, article 12, that many provisions of the chapter including portions of sections 130, 168, subdivision 2, 410, subdivision 1, 412, subdivision 1, 413, subdivision 2, 415, subdivision 1, 417, subdivision 1, 418, subdivision 1, 418, subdivision 3, 420, 421, 422, subdivision 1, and 422, subdivision 2, will become *prima facie* applicable to the two insurers and their subscribers and principals and will " dislocate " their present plan of insurance so as to cause irreparable injury. Therefore, they pray that those sections or subdivisions of sections be declared invalid, unconstitutional and void as against the plaintiffs and the subscribers and principals of the respective insurers.

Special Term found facts from which it concluded that Canners and Warner were doing business in this State. The Appellate Division reversed three and a portion of a fourth finding of fact. The three findings reversed are the following:

" 16. All the subscribers in both groups are associated in the common aim or purpose of receiving and giving indemnity in case of loss. The liability of each Subscriber is to pay his part of the losses and expenses in the ratio that his deposit bears to all the deposits."

" 26. The insurance engineers carry blank forms of appointment of agent and power of attorney. These are furnished to prospective subscribers by the insurance engineers upon request. The power of attorney or appointment of agent is fully executed, in the State of New York. It is complete when the prospective subscriber

affixes his signature in this state, oftentimes in the presence of the insurance engineer."

" 28. In case of loss, particularly a large one, the insurance engineers investigate the cause of the loss and the extent thereof. The investigation with respect of the loss is made in the State of New York."

There was a reversal of the following sentence in finding 27: " The premiums or deposits are paid with checks drawn on New York State banks."

The weight of the evidence was clearly with Special Term as to findings 16· and 28. As to finding 27, it is unimportant whether the premiums or deposits were paid· by checks drawn on New York State banks. As to finding 26, the weight of the evidence as to the findings in the first two sentences is with the Appellate Division but the findings are unimportant. As to the remaining two sentences, they constitute mixed findings of fact and conclusions of law. In so far as it was found that the power of attorney or appointment of agent was signed in this State by the prospective subscriber and principals, the weight of the evidence is with Special Term.

Taking the unreversed findings of Special Term and those which were reversed but which are supported by the weight of the evidence, the conclusion of law of Special Term numbered 3 that " The plaintiffs are doing the business of insurance in the State of New York " follows of necessity. Each subscriber and each principal is an insurer and initiates within this State his contract of inter-insurance. This is not a situation where the applicant for insurance to be issued to him solely as an *insured* mails an application for that insurance to a foreign company in a foreign State. In this instance the insurer, resident here, signs a power of attorney or appointment of agent within this State and confers thereby power upon the attorney or agent to execute for him a policy of insurance so that he, our resident, may become the insurer reciprocally of hundreds of risks throughout this country and in Canada. Our resident is an insurer and it matters not where his attorney or agent executes the contract of insurance by which he is bound. Thus Insurance Law, section 41, subdivision 3, now provides: " The term ' doing an insurance business,' within the meaning of this chapter, shall be deemed to include (a) the making, as insurer, or *proposing to*

*make as insurer*, of any insurance contract \* \* \*." The two reciprocal insurers are but the aggregations of the subscribers and principals. (Ins. Law, § 410.)

Apart entirely from the findings of Special Term and the resultant necessary conclusion of law that the two insurers are transacting the business of insurance in this State, there is another reason why plaintiffs may not have the declaratory judgment they seek.

The contention of the plaintiffs is this: That the two insurers have been authorized by the Superintendent of Insurance of the State to transact insurance business here but, despite such authorization, are not transacting any business in this State; that although so *authorized* and *licensed*, since they are not transacting business here, they are not subject to our statutory regulation of *authorized* reciprocals but must be treated as though foreign *unauthorized* reciprocal insurers; that as such foreign reciprocal insurers not doing business here, New York State may not regulate their insurance contracts or conduct here because such attempted regulation would run counter to the rule announced in *Allgeyer* v. *Louisiana* (165 U. S. 578) and subsequent authorities holding similarly.

Plaintiffs concede that the two insurers sought authorization to transact business within this State for two reasons: *First,* each subscriber and principal within this State is enabled to serve process upon the Superintendent of Insurance and thus sue the two insurers in our courts upon losses suffered here, and *second,* the licenses enable the insurers to file with and to have audited by the New York Superintendent, annual statements which are available for examination by resident subscribers and principals. In addition subscribers and principals know that the minimum capital and the assets of the insurers, since they have been licensed here, must be substantially the same as those of domestic insurers. (Ins. Law, §§ 42, 90.) These considerations are helpful competitively in obtaining insurance business. That much the two insurers desire. The position they seek to maintain, however, is that since, although authorized, they transact no business here, they may not be held subject to our statutes applicable to authorized reciprocal insurers in other respects but must be treated as though unauthorized.

We must bear in mind in considering the contention of Canners and Warner that the Legislature imposed only the same conditions

upon them as foreign insurers as were imposed upon domestic insurers, in so far as obtaining a license to do business within this State is concerned. We make no distinction. Thus Insurance Law, section 414, subdivision 2, reads as follows: " Every such *existing reciprocal insurer* and *every authorized foreign reciprocal insurer*, shall, within one year after the effective date of this chapter, have so revised its subscribers agreement and its articles of association, if any, as to conform to the requirements applicable to reciprocal insurers hereafter to be organized under the provisions of this article." Domestic reciprocal insurers are organized under section 411 of the article. Insurance Law, section 422, is entitled *Foreign or alien reciprocal insurers* and provides for the licensing of a reciprocal insurer of another State or of the Dominion of Canada. The section, subdivision 1, then provides: " * * *. Such foreign or alien reciprocal insurer shall comply with substantially the same requirements of this chapter which are applicable to domestic reciprocal insurers hereafter to be organized and authorized to do the same kind or kinds of insurance business * * *."

Requirements such as these are not attempts to control the operations of foreign insurers outside the State of New York and thus to exercise extra-territorial power. (*Firemen's Ins. Co.* v. *Beha*, 30 Fed. Rep. [2d] 539; affd., 278 U. S. 580.) There the court said (at p. 542):

" The second constitutional ground is that the statute, if it requires, as a condition upon the grant of the plaintiff's license, that it conform its investments in New Jersey to the provisions of the New York law respecting domestic corporations, attempts to control its operations outside New York, and thus to exercise an extraterritorial power. If so, then any other New York statute which subjected foreign insurance companies to the same regulations as domestic in respect of their solvency would be unconstitutional, unless it could be complied with by conduct taking place only in New York, which it seldom could. For example, a state might not prescribe the necessary proportion between the assets and liabilities of a foreign insurance company, or the amount of its cash capital, as a condition to its doing business within its borders. * * *

"Perhaps the power may be limited by the purpose and the fitness of the measure to accomplish it; but, whether that be true or not, when so limited it is not further circumscribed by the indirect effects of its operation. As we have said, scarcely any condition can be imposed touching the financial stability of a foreign corporation, which will not involve some results elsewhere; it is enough that these be ancillary to the accomplishment of genuinely local purposes connected with the company's prospective business. Otherwise each state could set the standard of security for the rest of the Union, an intolerable limitation upon the autonomy of each community."

Let us now consider the sections of which complaint is made by the plaintiffs. Section 412, subdivision 1, provides that no *authorized* reciprocal insurer shall make any new agreement for insurance with any person, firm or private corporation who or which does not have assets in an amount not less than $10,000 in excess of liabilities. This applies to domestic and foreign reciprocals. Our Legislature has determined that this provision is advisable for the protection of our residents. If Canners or Warner is not *authorized* or *licensed* here, and transacted no insurance business here, the statute is not applicable. If an insurer be authorized in this State, it is clear that it must comply with the statute. Section 415, subdivision 1, provides that every subscriber of an *authorized* reciprocal insurer "shall have executed a subscriber's agreement," and every subscriber shall execute and duly acknowledge the same in a manner sufficient for the acknowledgment of conveyances of real property to be recorded in the state of the subscriber's domicile and that each agreement shall contain certain designated provisions. This applies to domestic and foreign reciprocals. Since the two insurers are licensed, this section is applicable. So it is as to sections 168, subdivision 2, 410, 413, subdivision 2, 417, subdivision 1, 418, subdivisions 1 and 3, 420, 421 and 422, subdivision 2.

As to section 130 a different problem is presented. That section provides, in substance, that "no licensed foreign" insurer shall in this State issue, deliver or otherwise effectuate any contract of insurance covering certain persons, properties or risks "unless such contract of insurance is issued or effectuated through, or counter-

signed by, a resident licensed insurance agent of this state." Canners and Warner contend that they have never issued, delivered or otherwise effectuated a contract of insurance in this State. If that were so, section 130 would be inapplicable to them. It is, however, applicable because, as indicated above, they are doing business here.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, LEWIS and DESMOND, JJ., concur.

Judgments reversed, etc.